Lula B. COLEMAN, as Guardian of the Estate and Person of Frances Lockett, an Incompetent Person, Plaintiff-Appellant,

v.

INDIANA VENEERS, INC., Defendant-Appellee.

No. 2–378A72.

Court of Appeals of Indiana, First District.

Oct. 30, 1979.

Rehearing Denied Dec. 12, 1979.

Stephen M. Coons and William F. Thompson, Compton, Coons, Fetta & Thompson, Indianapolis, for plaintiff-appellant.

Howard J. DeTrude, Jr., Frank I. Magers and Peter G. Tamulonis and Kightlinger, Young, Gray & DeTrude, Indianapolis, for defendant-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

The Full Industrial Board of Indiana (the Board) awarded Frances Lockett the sum of $41.60 per week for 500 weeks after an industrial accident caused the death of her son. Mrs. Lockett contends that the benefits should be in the amount of $104.00 per week.

## FACTS

Carl Edward Lockett died on August 2, 1976, as a result of injuries sustained in an industrial accident at Indiana Veneers, Inc. His mother, Frances Lockett, filed a claim seeking benefits and alleged that she had been totally dependent upon her son, Carl Edward Lockett, for support and maintenance.

The Board found that Frances Lockett had independent sources of income but that she also relied upon money provided by Carl in meeting the costs of her care, support, and maintenance. After considering all of the evidence adduced at the hearing, the Board determined that 40% of Carl's income had been used for the benefit of his mother. Accordingly, the Board awarded benefits in the amount of $41.60, which is 40% of the amount which would have been payable if Carl had contributed all of his weekly wages for the benefit of his mother.

## ISSUE

Did the Board err in determining that the entire amount of Carl Edward Lockett's wages was not contributed by him to his mother?

## DISCUSSION AND DECISION

Our legislature has classified dependents for purposes of workmen's compensation benefits as (1) presumptive dependents, (2) total dependents in fact, and (3) partial dependents in fact. IC 1971, 22–3–3–18 (Burns Code Ed.). A parent is not presumed to be dependent upon his child for support. IC 1971, 22–3–3–19 (Burns Code Ed.). Therefore, the parent bears the burden of proving that he or she was dependent upon the earnings of the child and the extent of that dependency at the time of the child's injury. *In re Peters*, (1917) 65 Ind.App. 174, 116 N.E. 848.

The Board found that Frances Lockett received $158 per month from the Social Security Administration and also received regular monthly contributions from her children other than Carl. These findings are supported by the evidence and warrant the conclusion that Frances Lockett was a partial dependent rather than a total dependent of her son, Carl Edward Lockett.

IC 22–3–3–18 provides the following formula for calculating the amount of benefits available to a partial dependent:

"* * *

The weekly compensation to persons partially dependent in fact shall be in the

same proportion to the weekly compensation of persons wholly dependent as the average amount contributed weekly by the deceased to such partial dependent in fact bears to his average weekly wages at the time of the occurrence of the accident. * * * ”

Carl's weekly wages averaged $210.31 during the year 1976. The Board entered the following findings concerning the use of Carl's wages:

"It is further found that Carl, along with his mother, and brother David, lived at the residence located at 2347 North Rural Street, Indianapolis, Indiana, at the time of the accident. All residents of such house were over 18 years of age. The decedent held title to the house and real estate in question jointly, with a right of survivorship, with his two sisters, Martha Graves and Lula Coleman.

It is further found that although plaintiff testified that decedent gave to her his pay check every week ever since working at Indiana Veneers, the other evidence indicates that at least the last three of decedent's checks were cashed by him personally.

It is further found that after cashing the pay check, plaintiff would return to decedent $20.00 to $25.00 each week for personal, out-of-pocket expense money. If decedent requested additional funds on special occasions, such typically would be provided. Although the remainder of decedent's pay check proceeds were not allocated for particular purposes, most of such proceeds were used for three primary purposes; (1) payment for household living expenses (e. g., real estate taxes, utility bills, groceries, etc.); (2) payment for home improvements (e. g., $33.00 per month for new roof); (3) payment for other living expenses of decedent (e. g., approximately $80.00 per month for drugs during an illness of decedent prior to his death, Blue-Cross/Blue-Shield insurance for decedent and plaintiff at $30.00 per month.)"

■ The Board found that the evidence provided by Frances Lockett was insufficient to enable the Board to determine that any specific portion of Carl's wages had been allocated to the *exclusive* use and benefit of Frances Lockett. Nevertheless, the Board carefully considered all of the evidence and ascertained that 40% of Carl's income had benefitted Frances Lockett. In light of the substantial medical expenses which Carl had incurred prior to the industrial accident, the presence of David Lockett was well as Frances Lockett in Carl's home, and the conflicting evidence concerning the amount of money which Carl retained in his personal possession, the Board, as the finder of fact, reasonably calculated that only 40% of Carl's wages benefitted his mother. The findings of the Board are not clearly erroneous.

■ If Frances Lockett had been wholly dependent upon the earnings of Carl, her award would have been $104.00 per week. Because Carl contributed only 40% of his wages to his mother, the Board properly applied the formula appearing in IC 22–3–3–18 and awarded Frances Lockett a weekly benefit amounting to 40% of $104.00: $41.60.

Mrs. Lockett places emphasis upon the following findings of fact entered by the Board:

"  .   .   [T]he evidence reasonably suggests that the money received from decedent went into a common fund which was expended by the mother, plaintiff here, for the general upkeep of the home and the support and maintenance of everyone living in it, all adults."

It is further found that Frances Lockett depended upon the common fund and accordingly upon the decedent."

She then presents argument based upon a series of cases which address the subject of a family fund or common fund.

In each of those cases cited by Frances Lockett, a *minor, unemancipated* son was killed and claim for benefits was filed by one or both parents. The minor had con-

sistently contributed all or nearly all of his wages to a common fund maintained for the benefit of the parents, brothers, sisters, and other relatives living in the same household. Although the parents were found to be only partially dependent upon the minor child, the parents were awarded the maximum amount of benefits in accordance with the following rule as set forth in *Ritchie v. Indiana State Highway Commission*, (1935) 101 Ind.App. 32, 38, 198 N.E. 125, 127–128:

"Where there is partial dependency, and all the earnings of a deceased employee have been contributed to a common fund used for maintenance, the amount of compensation which should be awarded is the same as if the dependent claimant had been wholly dependent . . . ."

Mrs. Lockett maintains that the fact that her son was fifty years old and emancipated is not relevant in considering the applicability of the common fund theory to her case. In *Ritchie*, however, we note the following statement at page 37 of 101 Ind.App., at page 127 of 198 N.E.:

"The father of the deceased was entitled to his services and his earnings until he reached the age of twenty-one years, or was, prior to that time, emancipated."

A comparable statement is quoted in the case of *In re Peters, supra.*

In *Peters* the court considered but specifically rejected the contention that the cost of maintaining the minor should be deducted in determining the amount of compensation payable to the dependent father. When the court decided *Barker v. Reynolds*, (1932) 94 Ind.App. 29, 179 N.E. 396, the issue arose concerning a deduction for the cost of maintenance of a 30-year-old son when determining the amount of compensation payable to the partially dependent mother after that son's death. It was held

in that case that it was not improper to deduct the amount expended for support of the emancipated child. See also the opinion on rehearing in *Craddock Furniture Corp. v. Nation*, (1944) 115 Ind.App. 62, 55 N.E.2d 121.

■ IC 22–3–3–18 requires that the Board find "the average amount contributed weekly by the deceased to such partial dependent in fact." Although Mrs. Lockett was living in Carl's home rather than in her own home, it nevertheless was proper and necessary to deduct the amount reasonably attributed to Carl's maintenance. Furthermore, David Lockett resided in the household and an allowance had to be made for the costs of his maintenance which had been paid from Carl's wages. In this way the Board could calculate the average amount contributed weekly by Carl to his mother.

Mrs. Lockett has cited *Blue Ribbon Pie Kitchens, Inc. v. Long*, (1952) 230 Ind. 257, 103 N.E.2d 205. In that case a minor, unemancipated son was killed. The Full Industrial Board found that the parents were partial dependents. The Appellate Court [1] held that the portion of the son's wages which had been deposited in a bank account had not been contributed for the support or maintenance of the parents. The Supreme Court simply disagreed and stated that the deposited money did constitute a contribution for the benefit of the parents. In the case at bar we have no comparable issue. Instead, we have an emancipated son who undeniably had personal expenses and therefore could not have contributed all of his wages to his mother.

The Board had the duty of gleaning from the evidence the average amount which Carl contributed from his weekly wages to his mother. The Board acknowledged its inability to allocate a specific portion to the

1.  *Blue Ribbon Pie Kitchens v. Long*, (1951) Ind. App., 96 N.E.2d 695.

exclusive use and benefit of Frances Lockett. Rather than terminating its inquiry at that point as the opinion in *Guarantee Tire & Rubber Co. v. Cox*, (1933) 96 Ind.App. 363, 183 N.E. 679, suggests it might have,[2] the Board made a reasonable calculation for use in applying the formula found in IC 22–3–3–18.[3] Mrs. Lockett has not demon- strated that the Board committed any error prejudicial to her.

Award affirmed.

ROBERTSON and NEAL, JJ., concur.

---

2. *See also, E. I. du Pont de Nemours & Co. v. Dobrinich*, (1943) 113 Ind.App. 544, 49 N.E.2d 395.

3. Indiana Veneers, Inc. did not file a timely assignment of errors. We therefore do not address the challenges to the award which it argues in its brief.